IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AURORA GONZALES,**

        **Plaintiff,**

v.                                                      **CIV 03-0542 LAM**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security Administration,**

        **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse and Remand for a Rehearing* (*Doc. 11*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 12*), Defendant's response to the motion (*Doc. 13*), Plaintiff's reply to the response (*Doc. 14*), and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED IN PART AND DENIED IN PART**, and this case remanded to the Commissioner of Social Security (hereinafter, "Commissioner") for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

On August 9, 1999, Plaintiff, Aurora R. Gonzales, protectively applied for supplemental security income benefits. (*R. at 60-63.*)  In connection with her application, she alleged a disability since December 3, 1996, which was subsequently amended by her counsel to March 25, 1998. (*R. at 32, 61.*)  In connection with her application, Plaintiff alleged a disability due to back pain and numbness in her hands.  (*R. at 65.*)  There is also some evidence in the *Record* that Plaintiff suffers from, or complains of, neck pain, fatigue, vision problems, depression, dizziness, trouble sleeping, problems getting along with people and becoming easily angered, and problems concentrating and remembering instructions.  (*R. at 76, 78-80, 82-83, 85, 87, 89 , 98.*)  Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 45, 46.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on December 1, 2000. (*R. at 29-44.*)  Plaintiff was present and testified at the hearing. (*R. at 33-43.*)  Plaintiff was represented by counsel at the hearing. (*R. at 29-31.*)  On February 14, 2001, the ALJ issued his decision in which he found that Plaintiff was not disabled at step five of the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. (*R. at 17-22.*)  The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) she has not engaged in substantial gainful activity since the amended, alleged onset date of disability; (2) she has a "severe" impairment pursuant to the requirements in 20 C.F.R. § 416.921;[1] (3) she has not had a disorder, or combination of disorders, that meet or equal in severity any of the listed impairments; (4) while she has symptom-producing

---

[1]The ALJ found that Plaintiff had the severe impairment of chronic back pain. (*R. at 17.*) Under relevant Social Security regulations, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. §416.921.

medical problems, her testimony and other evidence do not credibly establish functional limitations to the extent alleged; (5) she has the residual functional capacity (hereinafter "RFC") to perform a wide range of sedentary work activity;[2] (6) she can perform simple, unskilled work at the sedentary level; (7) she is a "younger individual," as defined in the Medical-Vocational Guidelines (hereinafter, "Medical-Vocational Guidelines" or "Grids"), 20 C.F.R., Pt. 404, Subpt. P, App. 2; (8) she has an eighth-grade education; (9) she worked in the past as a cook, a job she described as medium in exertional requirements; (10) based on her RFC for sedentary work, she cannot perform any of her previous jobs; and (11) applying Rule 201.24 of the Grids,[3] Plaintiff has not been disabled at any time after her amended, alleged onset date through the date of the ALJ's decision.  (*R. at 17-21.*)

After the ALJ issued his decision, Plaintiff filed a request for review.  (*R. at 10.*)  On March 28, 2003, the Appeals Council issued its decision denying her request and upholding the decision of the ALJ.  (*R. at 7-9.*)  On May 6, 2003, Plaintiff filed her complaint in this action.  (*Doc. 1.*)

---

[2]More specifically, the ALJ found that Plaintiff had the RFC to: (1) lift a maximum of ten pounds, with occasional lifting and carrying of items such as files and small tools; (2) the ability to work primarily sitting, with only occasional walking and standing; (3) the ability to understand, carry out and remember simple instructions; (4) the ability to use judgment; (5) the ability to respond appropriately to supervisors and co-workers; and (6) the ability to deal with changes in a routine work setting.  (*R. at 21.*)  While the ALJ used the term "wide range" to describe the range of sedentary work activities that Plaintiff had the ability to perform, it is evident from his opinion that he intended "wide range" to mean "full range" with respect to her ability to perform work activities at the sedentary level.  (*R. at 19, 21.*)  Moreover, both parties agree that the ALJ found that Plaintiff could perform a "full range" of work activities at the sedentary level.  *See Plaintiff's Memorandum in Support of Motion to Reverse and Remand for a Rehearing* (*Doc. 12*), at 2; *Defendant's Response to Plaintiff's Motion to Reverse and Remand* (*Doc. 13*), at 3.

[3]Rule 201.24 of the Grids is applicable to younger individuals age eighteen to forty-four, who have a limited or less education but are at least literate and able to communicate in English, and whose work experience is unskilled or none.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.24.

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y. of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *See, e.g., Sisco v. U. S. Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  In making the substantial evidence determination on review, the Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was born on April 8, 1959.  (*R. at 33, 61.*)  At the time of the hearing, she was forty-one years old.  (*R. at 33.*)  She attended school through the eighth grade.  (*R. at 34.*)  During the fifteen-year period prior to her application for supplemental security income, Plaintiff worked as a cook from October, 1986 until January, 1994. (*R. at 66.*)

All of Plaintiff's medical records are from her treating physician, Keith W. Harvie, D.O.  (*R. at 94-105, 117-120, 122.*)  Plaintiff began seeing Dr. Harvie after she injured her back in 1991.[4]  (*R. at 105.*)  Her earliest documented office visit to Dr. Harvie was in October of 1996, although the notes

---

[4]At the administrative hearing, Plaintiff testified that she was injured in an accident at work in 1991.  (*R. at 35-36.*)

4

of this visit reference a prior office visit in 1993, at which time Plaintiff was given an impairment rating of 7% to her body as a whole. (*R. at 104-105.*) The notes of this visit indicate that Plaintiff complained of back pain, shaking in her hands and legs, "knots in her stomach," and problems sleeping. (*R. at 105.*) Dr. Harvie noted that she appeared to be "in moderate distress." (*R. at 105.*) Dr. Harvie's impression was of "chronic back pain," with "no signs of any nerve root injury." (*R. at 104.*) Dr. Harvie's notes include his opinion that Plaintiff had reached her "maximum medical improvement," and there was nothing more that could be done for her. (*R. at 104.*) The notes indicate no further appointment was made and state that Plaintiff was to return to Dr. Harvie's office on an as-needed basis only. (*R. at 104.*)

Plaintiff next saw Dr. Harvie in November of 1997. (*R. at 102-103.*) The notes of this visit indicate that Plaintiff again complained of back pain and that she appeared to be "in minimal to moderate distress." (*R. at 103.*) Plaintiff also complained of problems sleeping and of "a pressure feeling in her lower back" when she moved her bowels. (*R. at 103.*) Plaintiff was advised about exercise and activities, given a prescription for the anti-inflammatory drug Lodine, and instructed to return for another office visit in one month. (*R. at 102.*) Plaintiff saw Dr. Harvie one month later in December of 1997, for "further review of her back pain." (*R. at 101.*) Dr. Harvie's notes indicate that Plaintiff reported "feeling a little bit better," but still had pain. (*R. at 101.*) Plaintiff was advised about exercises and activities and instructed to return in three months for further review. (*R. at 101.*)

Plaintiff saw Dr. Harvie again in March of 1998. (*R. at 99-100.*) Dr. Harvie's notes indicate that Plaintiff complained of back and neck pain, and that she appeared to be "in moderate distress." (*R. at 100.*) Plaintiff reported that she continued to take the medication Lodine, "which seems to

5

help." (*R. at 100.*)  Plaintiff was advised about exercises and activities, instructed to continue taking the Lodine, and told to return in six months for a semi-annual review.  (*R. at 99-100.*)

Plaintiff next saw Dr. Harvie in September of 1998.  (*R. at 97-98.*)  She reported having had more back pain "lately," and also complained of upper back and neck pain and "trouble holding things."  (*R. at 98.*)  The notes of this visit indicate that Plaintiff appeared to be "in moderate distress."  (*R. at 98.*)  Plaintiff was advised about exercises and activities, given a new prescription for Lodine, and instructed to return to Dr. Harvie's office in five months.  (*R. at 97.*)

In February of 1999, Dr. Harvie sent a letter to Plaintiff's counsel stating that Plaintiff was last seen in his office in September of 1998, at which time she complained of problems with her hands and problems sitting and standing for any prolonged period of time.  (*R. at 96.*)  This letter stated that Dr. Harvie felt it was necessary for Plaintiff to "lay down frequently," and that "fine motor manipulation" would be difficult for Plaintiff.  (*R. at 96.*)

Plaintiff saw Dr. Harvie again in February of 1999.  (*R. at 95.*)  At this visit, Plaintiff complained of back and leg pain.  (*R. at 95.*)  Dr. Harvie noted that Plaintiff appeared to be "in moderate distress."  (*R. at 95.*)  Plaintiff was advised about exercises and activities, given a new prescription for Lodine, and advised to return in five months.  (*R. at 95.*)

Plaintiff returned to Dr. Harvie's office in July of 1999.  (*R. at 94.*)  She still complained of back pain, but reported she was a "little bit" better.  (*R. at 94.*)  She also complained that the Lodine seemed to be bothering her stomach.  (*R. at 94.*)  Dr. Harvie gave Plaintiff a prescription for Celebrex, to replace the Lodine, advised about exercises and activities, and advised to return in five months.  (*R. at 94.*)

Plaintiff saw Dr. Harvie again in July of 2000. (*R. at 117-120.*) She complained of "a lot of back pain," of feeling "off balance" when she walked, and of not eating or sleeping well. (*R. at 119.*) She reported that she was taking no medications. (*R. at 119.*) Dr. Harvie noted that Plaintiff appeared to be "in moderate distress." (*R. at 119.*) Plaintiff was advised about exercises and activities, given prescriptions for Vioxx and Prozac, and advised to return in one year for an annual review. (*R. at 120.*)

In January of 2001, Dr. Harvie sent a letter to Plaintiff's counsel explaining why the medication Prozac was prescribed for her in July of 2000. (*R. at 122.*) In this letter, Dr. Harvie stated that Plaintiff was given a prescription for Prozac at the time of her last office visit in 2000, "in the hopes that it would help to decrease her pain, help improve her eating and sleeping habits as well as help her to better cope with the problems she is having." (*R. at 122.*)

Based on Dr. Harvie's prescription of the drug Prozac for Plaintiff, her complaints of trouble eating and sleeping, and her "problems with coping," Plaintiff's counsel requested a consultative psychological or psychiatric evaluation of Plaintiff after the administrative hearing on the grounds that Plaintiff suffered from depression. (*R. at 121-122.*) This request was acknowledged by the ALJ, but it was denied based on the ALJ's conclusion that there was insufficient reason to request further evidence of a mental impairment. (*R. at 20.*)

On September 30, 1999, a state agency physician completed a physical residual functional capacity assessment form for Plaintiff. (*R. at 106-113.*) The state agency physician found that Plaintiff had the following exertional limitations:[5] (1) she could occasionally lift and/or carry

---

[5] These exertional limitations are consistent with the physical exertion requirements for "light" work. *See* 20 C.F.R. § 416.967(b).

7

(including upward pulling) a maximum of twenty pounds; (2) she could frequently lift and/or carry (including upward pulling) a maximum of ten pounds; (3) she could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; (4) she could sit (with normal breaks) for a total of about six hours in an eight-hour workday; and (5) she could push and/or pull (including operation of hand and/or foot controls) without limitation, other than as shown for lift and/or carry. (*R. at 107.*)  He found that Plaintiff could frequently stoop, kneel, crouch and crawl, and that she had no manipulative, visual, communicative or environmental limitations. (*R. at 108-110.*)  He also found that Plaintiff's symptoms producing physical limitations were attributable to a medically determinable impairment. (*R. at 111.*)  His assessment was affirmed on review by another state agency physician. (*R. at 113.*)

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred at step five of the sequential analysis.  Specifically, Plaintiff asserts that: (1) the ALJ's use of the Grids to determine that Plaintiff was not disabled is contrary to law; (2) the ALJ erred in assessing Plaintiff's credibility; and (3) the ALJ failed to fully develop the record regarding Plaintiff's allegations of depression and its effects on her ability to function.  Additionally, Plaintiff contends that because portions of the administrative hearing transcript in this case are inaudible, a review of the complete record is impossible warranting remand. Plaintiff asks the Court to reverse and remand this case for a new hearing.  Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

### A.  Use of the Grids

Plaintiff contends that the ALJ erred in his use of the Grids to determine that Plaintiff was not disabled.  Plaintiff argues that the ALJ's use of the Grids was improper because Plaintiff suffers from the nonexertional impairments of pain and depression which affect her ability to function, making it inappropriate to rely exclusively on the Grids to find that she was not disabled.  Accordingly, Plaintiff argues that the ALJ should have used the Grids only as a framework for decision-making and called a vocational expert to testify, or considered other vocational evidence, as to the effects of Plaintiff's pain and depression on her ability to function.  Defendant argues that the ALJ properly applied the Grids to determine that Plaintiff was not disabled.

In this case, at step two of the sequential evaluation process, the ALJ found that Plaintiff suffered from chronic back pain which was a severe impairment.  (*R. at 17.*)  While he did not find that Plaintiff suffered from a severe impairment of depression, the ALJ considered Plaintiff's allegations of depression in his assessment of her RFC.  (*R. at 18-21.*)  Taking into account Plaintiff's pain and alleged depression, the ALJ concluded that Plaintiff was capable of performing "the basic physical and mental activities" required for sedentary work.  (*R. at 21.*)  At step five of the sequential evaluation process, the ALJ applied the Grids and concluded that Rule 201.24 led to a conclusion of "not disabled."  (*R. at 21.*)

The ALJ relied exclusively on the Grids to determine that Plaintiff could perform work available in significant numbers in the national economy.[6]  However, reliance on the Grids may be

---

[6]Although there are some references in the ALJ's opinion to using the Grids as a framework for decision-making (*R. at 21*), it is apparent from the rest of the opinion that the ALJ relied exclusively on the Grids to determine that Plaintiff was not disabled.  Additionally, the parties appear to agree that the ALJ relied exclusively on the Grids in determining that Plaintiff was not disabled.
(continued...)

9

inappropriate when a claimant has nonexertional limitations such as pain and mental impairments. *See Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991) (citing *Channel v. Heckler*, 747.F.2d 577, 580 (10th Cir. 1984)). The Tenth Circuit has held that conclusive reliance on the Grids is only appropriate if the ALJ finds: "(1) that the claimant has no significant nonexertional impairment; (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). "Each of these findings must be supported by substantial evidence." *Id.* In this case, the ALJ made only the second finding required by *Thompson v. Sullivan*, *i.e.*, his finding that Plaintiff could perform a full range of work at the sedentary exertional level. (*R. at 21*.) Additionally, the ALJ's finding at step two that Plaintiff's chronic back pain was a severe impairment, appears, without explanation, to be inconsistent with a conclusion at step five that such back pain is insignificant.[7]

The Court concludes that the ALJ's failure to make the necessary findings required by *Thompson v. Sullivan* was a failure to apply correct legal standards and that his finding of "no disability" in exclusive reliance on the Grids is not supported by substantial evidence. Therefore, this case will be **remanded** for the limited purpose of either: (1) making the necessary findings required by *Thompson v. Sullivan* for exclusive reliance on the Grids and demonstrating how such findings are supported by substantial evidence; or (2) if the ALJ determines on remand that the Grids cannot be

---

[6](...continued)
*See Plaintiff's Memorandum in Support of Motion to Reverse and Remand for a Rehearing* (*Doc. 12*), at 8; *Defendant's Response to Plaintiff's Motion to Reverse and Remand* (*Doc. 13*), at 6-7.

[7]An impairment is "severe" at step two if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

applied conclusively to determine disability, obtaining vocational expert testimony regarding the effect of Plaintiff's non-exertional limitations on her ability to work and taking such testimony into account in determining if Plaintiff is disabled.

### B.  Assessment of Plaintiff's Credibility

The ALJ found that Plaintiff's testimony and other evidence did not credibly establish functional limitations to the extent alleged by Plaintiff.  (*R. at 18.*)  Although Plaintiff's argument regarding credibility is not entirely clear, Plaintiff appears to argue that the ALJ erred in assessing Plaintiff's RFC by considering the credibility of Plaintiff's pain complaints in his assessment. Additionally, Plaintiff argues that the ALJ's characterization of Plaintiff's treatment regimen as "conservative and actually somewhat sporadic,"[8] is inaccurate and fails to consider factors dictated by *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

"Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence.  *Diaz v. Sec'y. of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990).   However, such deference is not absolute. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)("Although this court ordinarily defers to the ALJ as trier of fact on credibility . . . deference is not an absolute rule." [citations omitted]). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."   *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

---

[8]*R. at 20.*

RFC "is primarily a measure of exertional capacity, i.e., strength"[9]; however, relevant Social Security regulations require that pain also be considered in evaluating residual functional capacity. 20 C.F.R. §416.945. Symptoms, such as pain, are considered along with "all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements about how . . . symptoms affect [the claimant]." 20 C.F.R. §416.929(a). The ALJ then determines the extent to which alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with this other evidence to decide how symptoms affect the claimant's ability to work. *Id.* Thus, it was not error for the ALJ to consider the credibility of Plaintiff's pain complaints in assessing her RFC.

The ALJ found that Plaintiff's "conservative and . . . somewhat sporadic" treatment regimen weighed against her credibility. (*R. at 20.*) In reaching this conclusion, the ALJ considered evidence that Dr. Harvie prescribed only one analgesic and anti-inflammatory medication during most of the time that Plaintiff was under his care, which he changed when Plaintiff complained that it bothered her stomach, and evidence that Plaintiff told Dr. Harvie during an office visit in July of 2000 that she was taking no medications. (*R. at 20, 94-105, 119-120.*) The ALJ also considered evidence that one year elapsed before Plaintiff returned to see Dr. Harvie in July of 2000, despite an instruction to return in five months, at which point he indicated in his notes that she did not need to return for another year. (*R. at 20, 94, 119-120.*) Given the evidence in the *Record,* the Court does not find the ALJ's characterization of Plaintiff's treatment regimen as "conservative and . . . somewhat sporadic" to be inaccurate. Nor does the Court find the factors in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), to be applicable. *Frey* requires the application of certain factors when an ALJ

---

[9]*Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988).

considers whether a claimant failed to follow a specific, prescribed treatment. *See, e.g., Jesse v. Barnhart*, 323 F.Supp.2d 1100, 1108 (D.Kan. 2004). In this instance, however, the ALJ, in assessing Plaintiff's credibility, was considering Plaintiff's lack of persistent attempts to find relief for her pain, not whether she failed to follow a specific, prescribed treatment.

### C.  Development of the Record Regarding Plaintiff's Allegations of Depression

Plaintiff argues that the ALJ should have developed the record regarding Plaintiff's alleged depression and its effects on her ability to function and argues that his failure to do so warrants remand for a psychological evaluation. Plaintiff contends that the ALJ should have ordered a consultative psychological examination of Plaintiff because there is evidence in the *Record* that she suffers from depression.[10] In support of this argument, Plaintiff points out that Dr. Harvie prescribed the anti-depressant medication Prozac for her in July of 2000 (*R. at 120*), "in hopes that it would help to decrease her pain, help improve her eating and sleeping habits as well as help her to better cope with the problems she is having." (*R. at 122.*) As further support for her argument, Plaintiff also relies on her own statements in the record that she has problems getting along with people, avoids people, has problems concentrating and remembering instructions, gets frustrated when faced with changes, gets very depressed and angry and cries and wants to be alone when she has a disagreement with someone, has trouble sleeping and feels depressed. (*R. at 79-80, 89.*)

The ALJ has a duty to order a consultative examination when a claimant has advanced evidence "sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). In deciding how much evidence is sufficient to raise

---

[10]Plaintiff's counsel requested a consultative psychological or psychiatric examination of Plaintiff after the administrative hearing. The ALJ denied this request, finding insufficient reason to request further evidence of a mental impairment. (*R. at 20, 121.*)

an issue requiring further investigation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.*

In this case there is nothing more than Plaintiff's subjective complaints and Dr. Harvie's prescription of Prozac in the *Record* to indicate that Plaintiff suffers from depression. There are no specific complaints or diagnoses of depression in Dr. Harvie's medical notes which cover the period from 1996 through 2000. Nor is there any evidence in Dr. Harvie's notes that he ever recommended that Plaintiff undergo evaluation or treatment by a psychologist or psychiatrist. Plaintiff testified at the administrative hearing that she was not taking Prozac. (*R. at 20, 40-41.*)[11] Additionally, Dr. Harvie's letter dated January 17, 2001, says that he prescribed Prozac to Plaintiff to help decrease her pain and improve her eating and sleeping habits, as well as to help her cope with the problems she was having. (*R. at 122.*) Based on the foregoing, the Court finds that Plaintiff has not demonstrated that her situation required the ALJ to obtain a consultative psychological examination to inquire into an undiagnosed condition of depression.

### D.  Inaudible Portions of the Administrative Hearing Transcript

The transcript of the administrative hearing conducted by the ALJ contains sections where the testimony at the hearing was inaudible and is not transcribed. (*R. at 33-41.*) Plaintiff argues that these inaudible portions of the transcript make proper review of this case impossible. Although the Court could find no Tenth Circuit law on this point, other courts have held, as the parties point out, that when missing portions of a transcript prevent judicial review, the court should remand the case

---

[11]While portions of this testimony were inaudible, the ALJ specifically found that Plaintiff acknowledged at the administrative hearing that she stopped taking the antidepressant medication Dr. Harvie prescribed. (*R. at 20.*) Plaintiff has not disputed that finding.

for a rehearing. *See, e.g., Koning v. Bowen*, 675 F.Supp. 452, 457-458 (N.D. Ind. 1987). *But see Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986) (holding that a transcript with only occasional gaps of "a few words at a time" or "one and two times per page" did not preclude fair review).

The Court has reviewed the transcript of Plaintiff's administrative hearing (*R. at 29-44*), along with the entire *Record* of this case. While there are inaudible sections in the transcript of the hearing,[12] the Court does not find these sections to be so numerous as to prevent proper judicial review. Additionally, most of the inaudible sections concern subjects covered elsewhere in the *Record*. Accordingly, the Court does not find that the condition of the administrative hearing transcript warrants remand of this case for a rehearing.

## V. Conclusion

The ALJ properly assessed Plaintiff's credibility and did not err in failing to order a consultative psychological examination of Plaintiff. Additionally, the inaudible portions of the administrative hearing transcript do not make proper review of this case impossible. Accordingly, the Court will **DENY** Plaintiff's motion on those issues. However, the ALJ erred in his use of the Grids to determine that Plaintiff was disabled. Accordingly, the Court will **GRANT** Plaintiff's motion on that issue and remand this case for further proceedings consistent with this Memorandum Opinion and Order.

**WHEREFORE, IT IS HEREBY ORDERED** that *Plaintiff's Motion to Reverse and Remand for a Rehearing* (*Doc. 11*) is **GRANTED IN PART AND DENIED IN PART** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum

---

[12]There are thirty-nine indications of "inaudible" testimony in the transcript for an average of 1.12 inaudible portions per page.

Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**